```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**RUTH E. NICEWARNER,**

        **Plaintiff,**

**v.**                                    **Civil Action No. 2:13-cv-2806**

**QUICKEN LOANS INC. and**
**DELMAR BARRETT and**
**BANK OF AMERICA, NA,**

        **Defendants.**


### MEMORANDUM OPINION AND ORDER


        **Pending is the motion by plaintiff Ruth E. Nicewarner to remand, filed March 14, 2013. For the reasons below, the court finds that the nondiverse defendant was properly joined, grants the motion, and remands the case.**


        **I. Background – According to the Complaint**


        **Ms. Nicewarner resides with her husband at her home in West Virginia and works in part time, low wage jobs. Compl. ¶ 2. Quicken Loans Inc. ("Quicken") is the corporate lender who provided her with successive loans and has a principal place of business in Detroit, Michigan. <u>Id.</u> ¶ 3. Delmar Barrett was the**

closing agent for the subject transactions and resides in Martinsburg, West Virginia. Id. ¶ 4. Bank of America, NA, is the servicing agent for the loans and has a principal place of business in Charlotte, North Carolina. Id. ¶ 5. The allegations of fact, as set forth in the amended complaint ("the complaint"), are as follows.

Ms. Nicewarner purchased her home in 1984 for approximately $48,000. Id. ¶ 6. In 2007, she had a home loan from an unnamed lender for approximately $60,000. Id. ¶ 7.

In around 2007, Ms. Nicewarner responded to a solicitation by Quicken to refinance her home loan. Id. ¶ 8. On September 29, 2007, Quicken originated a loan secured by her home in the amount of $91,000. Id. ¶ 9. The loan included significant settlement charges including thousands of dollars of fees paid to Quicken. Id. ¶ 10. Quicken immediately transferred servicing of the loan to Countrywide, Bank of America's predecessor. Id. ¶ 11.

Less than a year after the 2007 loan, Quicken again solicited Ms. Nicewarner to refinance her home. Id. ¶ 12. In May of 2008, an out of state appraiser came to her home and conducted an appraisal in approximately fifteen minutes without entering the home. Id. ¶ 14. Quicken informed her that the home had appraised for $125,000.

Mr. Barrett conducted the closing at the Lion's Club on August 18, 2008.  Id. ¶ 16.  He is not a licensed attorney, and the complaint alleges that he "did not have the ability to explain the transaction" and did not provide Ms. Nicewarner with a "meaningful opportunity to understand the terms and impact." Id. ¶ 17.  On the same day, Quicken originated a loan with an initial principal balance of $119,262 and settlement charges of over $7,500.  Id. ¶ 18.

Around June 2009, Quicken again solicited Ms. Nicewarner to refinance her loan.  Id. ¶ 20.  It did not arrange for an appraisal, instead providing her with the $125,000 figure from May 2008.  Id. ¶¶ 21-22.  The loan was closed at Summit Point Raceway and was rushed.  Id. ¶ 23.  Mr. Barrett again conducted the closing and was again unable to explain the transaction.  Id. ¶ 24.  Quicken closed the loan on July 2, 2009 with an initial principal balance of $120,988, additional fees of $3,254.96, and a requirement that Ms. Nicewarner pay Quicken $324.17 of her own funds to close the loan.  Id. ¶ 25.  Directly after the origination of the 2009 loan, Quicken transferred servicing to Bank of America.  Id. ¶ 27.

As a result of these transactions, Ms. Nicewarner paid over $11,000 in settlement charges in eleven months.  Id. ¶ 26. Also, each transaction included the prior transaction's finance

3

charges and costs in the principal balance of the new loan, such that interest would be charged on prior points and fees.  Id.

In September 2012, Ms. Nicewarner learned that the market value of her property in August 2008 was approximately $102,000, and that the market value of her property in July 2009 was approximately $70,000.  Id. ¶ 52.  The complaint states that she would not have refinanced or increased her loan amount if she had known the true value of her home.  Id. ¶ 53.  On November 7, 2012, Quicken again solicited her to refinance her home with Quicken.  Id. ¶ 54.

Ms. Nicewarner makes additional allegations regarding the servicing of her loan against Bank of America.  See id. ¶¶ 27-51.  The servicing allegations have no bearing on the issues underlying the pending motion to remand.

Ms. Nicewarner commenced this action in the Circuit Court of Kanawha County, West Virginia on January 17, 2013.  Her complaint sets forth ten counts: five relating to loan origination and five relating to loan servicing.  The origination counts are alleged against all defendants and include Count I, Unconscionable Contracts; Count II, Illegal Loan; Count III, Fraud; Count IV, Joint Venture & Agency; and Count V, Unauthorized Practice of Law.  The servicing counts are alleged against Bank of America and include Count VI, Breach of Contract; Count VII, Misrepresentations & Unconscionable Conduct

4

in Debt Collection; Count VIII, Refusal to Apply Payments; Count IX, Illegal Fees; and Count X, Illegal Debt Collection.

On February 15, 2013, Quicken removed the case to federal court, asserting fraudulent joinder of Mr. Barrett and invoking this court's diversity jurisdiction. See 28 U.S.C. § 1332(a)(1). On March 1, 2013, following a stipulation of consent, Ms. Nicewarner filed the amended complaint. On March 14, 2013, she moved to remand on the ground that the defendants failed to establish fraudulent joinder.

## II. The Governing Standard

"Except as federal law may otherwise provide, when a defendant removes a state civil action to federal district court, federal removal jurisdiction exists if the action is one 'of which the district courts of the United States have original jurisdiction.'" In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006) (quoting 28 U.S.C. § 1441(a)). Federal district courts possess original jurisdiction over all actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

The doctrine of fraudulent joinder permits a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume

jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). Our court of appeals lays a "heavy burden" upon a defendant claiming fraudulent joinder:

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

Id. at 464 (emphasis in original) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). Indeed, "'the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiffs favor.'" Mayes, 198 F.3d at 464 (quoting Marshall, 6 F.3d at 232–33).

As Hartley illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand. See Hartley, 187 F.3d at 425. At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

6

> [A] jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . uncertain questions of law and fact. . . . Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules. . . .
>
> We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. [Plaintiff's] claims may not succeed ultimately, but ultimate success is not required to defeat removal. Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

Id. at 425–26 (citations omitted).

In determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." Mayes, 198 F.3d at 464 (internal quotations omitted).

### III. Discussion

Ms. Nicewarner does not dispute that the amount in controversy eclipses the $75,000 jurisdictional threshold. She contests only that Quicken has established complete diversity of citizenship by meeting the standard for fraudulent joinder. Since Quicken does not allege any fraud in the pleading, the only question for fraudulent joinder purposes is whether Ms.

7

Nicewarner has any possibility of recovery in state court against the nondiverse defendant, Delmar Barrett.

The complaint appears to assert each of the five origination claims against Mr. Barrett, noting parenthetically that they apply to "All Defendants." Compl. 9. The fraudulent joinder analysis begins, and ends, with Count III, inasmuch as Ms. Nicewarner has some hope of recovery from Mr. Barrett on that claim.

In order to establish a claim for fraud, a plaintiff must allege

> "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it."

Syl. Pt. 2, Jennings v. Farmers Mut. Ins. Co., 687 S.E.2d 574, 575 (W. Va. 2009) (quoting Syl. Pt. 1, Lengyel v. Lint, 280 S.E.2d 66 (W. Va. 1981)). The fraudulent representation only has to "contribute[] to the formation of the conclusion in the plaintiff's mind" and need not "be the sole consideration or inducement moving the plaintiff." Syl. Pt. 3, id. at 576 (quoting Syl. Pt. 3, Horton v. Tyree, 139 S.E. 737 (W. Va. 1927)).

Ms. Nicewarner asserts that Mr. Barrett, the closing agent, misrepresented to her that her home "has a value of

8

$125,000 and that Defendant Quicken was following responsible and prudent lending practices." Compl. ¶ 65. She alleges that the representation was false -- that the real market value of the loan was $70,000 -- and that she reasonably relied on the representations. Id. ¶ 66, 69. Quicken asserts in its notice of removal that the complaint limits fraud allegations to "Defendant Quicken" and "make[s] no mention of Mr. Barrett." Not. Removal 6 n.2. The complaint, however, states that "Defendant Quicken's employees" made the misrepresentations as to home value and lending practices "over the telephone and again through the closing agent." Compl. ¶ 65. Inasmuch as Mr. Barrett is described in the complaint as the closing agent, his role is sufficiently alleged.

      The relative positions of the parties and representation as to "responsible and prudent lending practices" support Ms. Nicewarner's assertion of reliance. She alleges that she would not have refinanced her loan or increased her loan amount if she had known the true value of her home. Id. ¶ 53. Consequently, her asserted damages arise from the alleged misrepresentation. The allegations adequately set forth a fraud claim against Mr. Barrett.

      Quicken asserts that the fraud claim is nonetheless time-barred under West Virginia's two-year limitations period. See W. Va. Code § 55-2-12. It contends that Ms. Nicewarner

"cannot avail herself of the discovery rule because had she exercised reasonable diligence, she would have discovered the allegedly true market value of her home well before September 2012." Opp'n 14. Whether Ms. Nicewarner exercised reasonable diligence, however, is an issue of fact. The court, at this juncture, cannot resolve the issue to find that there is "no possibility" of recovery.

The court concludes that Ms. Nicewarner's Count III fraud claim gives rise to a possibility of relief against the nondiverse defendant Mr. Barrett. Having so determined, the court need not consider the parties' arguments respecting the remaining counts.

IV.

Based upon the foregoing discussion, it is, accordingly, ORDERED that Ms. Nicewarner's motion to remand be, and it hereby is, granted.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

ENTER: September 3, 2013

John T. Copenhaver, Jr.
United States District Judge

10